**In re SO GOOD POTATO CHIP COMPANY, Debtor.**

**Norman W. PRESSMAN, Trustee, Plaintiff,**

v.

**Marvin RODEMICH and Ruth Ann Rodemich, d/b/a Archview Farms, Defendants.**

Bankruptcy No. 88–44524–172.
Adv. No. 91–4292–172.

United States Bankruptcy Court, E.D. Missouri, E.D.

Feb. 25, 1992.

A. Thomas DeWoskin, Robert E. Eggmann, St. Louis, Mo., for Trustee.

Ronald D. Stanley, Columbia, Ill., for defendants.

### MEMORANDUM

JAMES J. BARTA, Bankruptcy Judge.

The matter before the Court is the Trustee's complaint to recover a pre-petition transfer pursuant to 11 U.S.C. § 547. The following summary of the facts is based upon the Parties' Stipulation filed on February 11, 1992, and upon a consideration of the record as a whole.

This is a core proceeding pursuant to Section 157(b)(2)(F) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Rule 29 of the Local Rules of the United States District Court for the Eastern District of Missouri.

This bankruptcy case was commenced by the Debtor on December 28, 1988, when it and two related entities filed for protection under Chapter 11. The cases were subsequently converted to liquidating Chapter 7 cases. Pursuant to a contract between

Debtor and Defendants, Defendants caused goods to be delivered to Debtor which were billed to Debtor on invoices dated August and September of 1988. Defendants received Debtor's check number 4348 in the amount of $4,428.11, dated October 8, 1988, for payment for delivery of these goods. The check was deposited in Defendants' checking account on October 11, 1988 and was returned by Defendants' bank on October 21, 1988 marked insufficient funds. Within ninety days prior to the filing of this case, Defendants received a replacement for the insufficient funds check, Debtor's check number 3704, dated October 24, 1988 in the amount of $4,428.11.

The issue presented in this adversary proceeding is whether a pre-petition payment made by a debtor to an unsecured creditor in the ninety days preceding bankruptcy constitutes an avoidable preference under 11 U.S.C. § 547(b) when the transfer represented a payment for the replacement of a check that had been dishonored because of "insufficient funds".

The parties agree that the requirements of 11 U.S.C. § 547(b) have been satisfied, and the transfer is subject to being avoided. Defendants argue, however, that this transfer is excepted from the Trustee's avoidance powers in that it was made in the ordinary course of business pursuant to 11 U.S.C. § 547(c)(2). In determining whether this transfer was in the ordinary course of business the Court finds "that the term 'ordinary' contemplates, at least in part, that which is ordinary as between the respective parties." *In re Ewald Brothers, Inc.*, 45 B.R. 52, 57 (Bankr.D.Minn.1984). There is no evidence that the Debtor's regular course of business included payment to Defendants in the form of insufficient funds checks. In fact, the record does not refer to any such transactions prior to the payment that is the subject of this proceeding.

The *Ewald* case has facts very similar to the case before this Court now, except that instead of issuing another check to replace the insufficient funds check the debtor in *Ewald* instructed the creditor to redeposit the original check. The court in *Ewald*

found this type of payment was not ordinary to the parties' normal financial relationship and that "it was unusual action by the debtor to which the preference section is directed." *Id.* at 58. The Fourth Circuit agreed with this when it found that Congress did not "intend a bad check and subsequent payment to make it good to be viewed as in the ordinary course of affairs between two parties or made according to ordinary business terms." *In re Barefoot*, 952 F.2d 795, 800 (4th Cir.1991).

This Court must agree with those cited above and find that the transaction in question was not in the ordinary course of business between these parties and is therefore not entitled to the exception under 11 U.S.C. § 547(c)(2).

Defendants also argue that the date of the original check should govern in determining whether this transfer was within the preference period. That is, Defendants believe that the replacement check should relate back to the date of the original check. This Court must also reject this argument and find that the good check cannot be related back to the date of the bad check. The Fourth Circuit held similarly in *In re Barefoot*, 952 F.2d 795 (4th Cir.1991), where it found that, "when a check bounces, the date of delivery of the dishonored check no longer determines the time of transfer for the purpose of § 547(b)." *Id.* at 798. In *Barefoot* the creditor received a check from the debtor which was later dishonored. This was the first time that one of the debtor's checks to this creditor had bounced. To replace the bounced check the debtor sent three wire transfers to the creditor. The wire transfers were within the ninety days of filing the bankruptcy petition. The trustee sought to set aside the wire transfers as preferences and the bankruptcy court ruled in favor of the trustee. The district court and the Fourth Circuit affirmed the bankruptcy court's decision. The Fourth Circuit in *Barefoot* reasoned that to let a later good transfer relate back to a bad transfer would have the "effect of giving operative legal significance to bad checks ... [and] would also undermine both of Congress' purposes for § 547(b)." *Id.* at 798. There-

fore, this Court holds that there is no relation back. For purposes of determining whether the Trustee here can avoid the transfer of funds by Debtor to Defendants as being within the preference period, we will consider the date of the replacement check only (October 24, 1988) and not the date of the original bad check. This latter date is within the preference period and all other requirements having been satisfied, the transfer will be avoided.[1] Therefore, judgment will be entered in favor of the Trustee.

---

**1.** Even if Defendants' relation back argument was accepted and the date of the original check considered, the transfer would still be avoided as the preference period ran from September 28, 1988 to December 28, 1988 (date of filing), and the date of the original check was October 8, 1988, which is within the preference period.